Nov. Term, 1861.

Cross
v.
Pearson.

---

## Cross *v.* Pearson.

Suit by *A.* against *B.*, before a justice of the peace, upon a writing as follows, viz., "Twelve months after date, I promise to pay to the order of *A.*, the sum of eighty dollars and fifty cents, value received; but should the beast prove unsound, a deduction to be made by two disinterested persons." Signed by *B.* This instrument had been assigned in writing to *A.*, and *C.*, the assignor, was made a defendant to answer as to his interest; but, on motion of the defendant, his name was stricken out. Answer: 1. That the note was given for the price of a horse, which was represented and warranted to be sound, &c.; that, in fact, said horse was unsound, &c., by reason of which the consideration of said note had failed. 2. That after defendant had discovered the unsoundness of the horse, he had requested *C.* to select an appraiser, which he refused to do, and that defendant then had said horse appraised, and tendered to *C.* the amount of such appraisement, and now brings the same into Court, &c. The defendant also filed a paper stating that he waived the general denial put in by statute, and all matters of defense, except those by him specially pleaded.

*Held*, that the general denial which is put in by statute, without pleading, before justices of the peace, may be waived by the defendant by putting his waiver of record.

*Held*, also, that the defendant, having expressly waived the general denial, was entitled to open and close the case.

*Held*, also, that by moving to dismiss *C.* as a party to the suit, the defendant waived any rights that might have accrued to him if *C.* had remained a defendant, and *C.*, by submitting to be thus dismissed, without objection, would be as fully concluded by the judgment as if he had continued a party to the record.

*Held*, also, that there was nothing in the writing to prevent proof being

made of a warranty of the horse, but when a warranty was once established, the contract prescribed the remedy for a breach, viz., by deduction from the amount of the note, and neither party could insist upon a return of the horse.

Instructions given or refused by the Court below, to which the counsel of the party objecting has appended an exception, by writing thereon "given and excepted to," or "refused and excepted to," signed by counsel, can not be regarded as part of the record unless signed by the judge also.

APPEAL from the *Wabash* Circuit Court.

HANNA, J.—*Pearson* executed to one· *Teague*, a writing, which was by him assigned, by indorsement, to *Cross*, who sued before a justice upon it, making *Teague* a defendant also. It is as follows:

"$87 50.                    WABASH, 11 Month 30th, 1858.

"Twelve months after date, I promise to pay to the order of *Abijah Teague*, the sum of eighty-seven dollars and fifty cents, value received; without any relief whatever from valuation or appraisement laws; but should the beast prove unsound, a deduction to be made by two disinterested persons."

The defendant answered: 1. That the assignment was without consideration, and for the sole purpose of enabling the assignor to be a witness, and that he was the real party in interest. 2. Admits the execution, &c., but avers that said note was given to secure the purchase money for a certain mare obtained of said *Teague*, who at, &c., represented and expressly warranted to defendant that said mare was in sound condition, free from disease, and a good working animal, &c. Averment of unsoundness and want of value, and that the same was known to *Teague* on, &c. That, therefore, there was a failure of consideration. 3. Avers that the contract was as set forth in the complaint, and second paragraph of the answer; and that after a trial, finding the animal unsound, &c., he informed *Teague* thereof, and requested him to appoint an appraiser, &c., which he refused to do: and that on, &c., defendant caused her to be appraised, by disinterested persons, who placed her value at fifteen dollars, which on, &c., before the commencement of said suit,

Nov. Term,
1861.
─────
CROSS
v.
PEARSON.

Thursday,
February 6.

Nov. Term,
1861.

CROSS
v.
PEARSON.

the defendant tendered to said *Teague*, who refused to receive the same. That defendant has been always ready to pay the same, and now brings it into Court, &c.   4. That after the breach of said contract, to wit, on, &c., defendant offered to return the mare, and rescind the contract, which *Teague* refused, &c.

On the first trial the jury failed to agree; on the second, verdict and judgment for plaintiff for fifty dollars; on appeal, verdict and judgment for defendant.

On the rulings in the Circuit Court many errors and cross-errors are assigned. We will notice them in the order in which they arose.

The defendant filed what he called an amendment to his defense, as follows:

"The defendant, by way of amendment to his defense, now on file, says that he admits the giving of the note sued on; that he waives the general issue allowed him by statute, and all matters of defense except those specially alleged in his answer on file."

The plaintiff thereupon moved for a judgment for the amount of his cause of action—the sum expressed in the said writing sued on—which was refused. After the jury was impanneled, &c., the plaintiff gave said cause of action in evidence, rested his case, and moved again for a judgment for said amount; which was again refused. After the return of the verdict he moved for a judgment, for said amount, on the pleading, notwithstanding the said verdict, which was likewise refused. And he now insists that the several special answers filed were nullities, because the defendant could give in evidence the matters, thus pleaded, under the general denial, which was in by statute in the Justice's Court. That having thus voluntarily waived the benefit of said statutory denial, and admitted the execution, &c., of said writing, which was the cause of action—the complaint—it amounted to an admission of the plaintiff's right to recover.

The statutes upon which the plaintiff builds up this theory are §§ 34 and 67 of the Justice's Act, 2 R. S., pp. 455 and 463.   The first is as follows: "All matters of defense, except

the statute of limitations, set-off, and matter in abatement, may be given in evidence without plea," &c.

The other section provides, that on appeal the case shall be tried under the same rules and regulations prescribed for trials before justices, and amendments of the pleadings may be made on such terms, &c., as the Court may order.

The plaintiff's interpretation of these statutes would preclude a defendant from filing any answers, unless in reference to the matters excepted in said § 34, and compel him to rely upon his statutory privilege of giving evidence without pleading, as to all matters other than those excepted.

We are not of opinion that the word, "may," as used in § 34, is synonymous with "shall, and should be understood to operate imperatively; but rather think a party may plead, if he desires to do so, or may rely upon the statutory right to proceed without pleading. The provision of the statute is clearly for the benefit of the defendant. He may accept it or not. He will be presumed to have accepted it unless the contrary is shown. Here, it is shown that he placed upon record an affirmative waiver of any rights under it. This we think he could do. The answers on file were affirmative, and in avoidance of the plaintiff's right to judgment; and, therefore, plaintiff could not have such judgment until they were in some manner disposed of. There was no effort to get rid of the same by motion or demurrer, and it only remained to proceed with a trial of the questions of fact presented. In this connection we might advert to the fact that the appellee complains here, by cross error, that he was not permitted to open and close, by producing evidence and offering argument. This he was entitled to do, under the issues: without evidence the plaintiff would have had a right to a judgment. The defendant had to produce it, to prevent such result, and was, as a matter of course, therefore, entitled to commence.

Upon motion of *Pearson*, the name of *Teague* was stricken out as a defendant. Plaintiff assigns this ruling as error. It is insisted that the instrument was not assignable by statute, so as to enable the assignee to sue, without making the assignor a party to answer, &c. On the other hand, it is urged that, as the record shows that *Teague* was a party, in

Nov. Term, 1861.

CROSS
v.
PEARSON.

Court, he alone could be injured by, or complain of, the ruling, and he does not do so. We think that if this was an instrument, assignable like a promissory note, then *Teague* was not a necessary party, and, for any thing appearing in the record, his name should have been stricken out; if it could be assigned only as in equity, like an open account, then he was a necessary party, for certain purposes, namely, that he might protect his own interest, if he had any; and that the defendant might be protected on certain questions of testimony. See *Swails* v. *Coverdill*, and authorities cited, *ante*, p. 337. By moving to strike out his name, as a defendant, the other defendant would be presumed to thereby, voluntarily, waive any rights accruing to him by *Teague's* remaining a defendant; and we think that he, by voluntarily submitting to be removed from the position which he occupied, acquiesced in the plaintiff's claim to be the real party in interest, and would be as fully concluded by the judgment as if he had remained a party to the record until the final decision.

It is next insisted that the Court erred in admitting parol evidence of the terms of the contract of sale, because the writing sued on was a special contract, and should be presumed to contain the agreement between the parties. If the suit had been upon a simple promissory note, the defendant could have shown the consideration thereof, and, if for the purchase of property, that it had failed because of a breach of a warranty of the same; although the promise to pay was, so far as the note showed, positive and unconditional. But, upon showing an apparent breach of the warranty, certain legal rules would have intervened, some for the benefit of the defendant, others for the protection of the plaintiff; among the latter, perhaps, might have arisen a presumption, that certain patent defects were not warranted against.

The instrument sued upon was a promissory note, in the usual form, with these words added, "but should the beast prove unsound, a deduction to be made by two disinterested persons."

The evidence shows that the note was not delivered to the payee for several days after the contract and delivery of the

animal, and that in the mean time a defect was apparent. Keeping in view this fact, we are of opinion that the defendant was authorized to introduce evidence to show: 1. To what animal the word "beast," as used, applied. 2. That the word "prove," as used, implied that there was to be a test or trial of the animal in reference to some point then in view, or generally, and, consequently, a reasonable time should elapse for such trial; depending, as to duration, upon the question to be determined. 3. Either party had a right, by evidence, to place the Court in possession of the facts, the circumstances surrounding the parties, at the time of the execution of the writing, to enable it to determine whether a deduction was to be made for any and all unsoundness, patent and latent, developed upon said test, or to some particular unsoundness, only, namely, that which was latent.

As to proof of warranty and breach thereof; if such existed, the defendant, if the contract did not change his rights, could: 1. Rescind the contract by returning the animal in a reasonable time, &c. 2. Or he could retain the animal and sue for a breach of the warranty. 3. Or set up the facts in reduction of the damages in a suit on the contract. 4. And, perhaps, (a point we need not decide) might fix the amount of the reduction, under certain circumstances, by selling the property.

We do not perceive any thing in the writing to prevent the proof of a warranty on the sale; but if such existed it prescribed the remedy of the parties upon the breach. They were not remitted to the general principles above stated as to such remedy. Neither the one party nor the other could insist upon a return of the "beast," but the defendant should retain it and a deduction should be made from the price to be paid.

Perhaps there is another sufficient answer to the objection, and that is, that the evidence was directed to the questions of fact raised by the answers, whether properly or improperly, was not made a question on the pleadings.

It is not insisted that the evidence of the value of the animal should have been confined to the time of the sale. The Court permitted each party to give evidence of the

Nov. Term, 1861.

CROSS v. PEARSON.

value at the time of sale, and of the trial, and various intermediate times.

It was shown that the defendant offered to return the animal in about a month, or that the parties should choose persons to fix the amount to be paid by him; and once or twice, not long afterward, the same propositions were made by him. That *Teague* refused to rescind, or to have any thing to do with the appraisal of the animal; but requested the defendant to further try said animal, and to try to cure her.

By the very terms of the contract a deduction was to be made from the contract price if the animal proved unsound. There is nothing in the contract nor in the evidence, if such fact could in that manner have been shown, fixing any other time for such deduction than the maturity of the contract for the purchase money; at the maturity thereof, the defendant caused persons to examine the animal, fix a value, and on the trial to testify to that fact. The evidence of defendant as to the value, at the end of a reasonable time to test her in, corresponded in substance with the amount fixed by the appraisers called. That of the plaintiff agreed as to her value, at the time of the sale, and at the time of trial, though the sum fixed by plaintiff's witnesses was greater than defendant's. He did not, to such an extent, appear to direct his attention to the time of the offer to return, or the maturity of the debt. Perhaps the true interpretation of the contract, as it related to a future determination as to a reduction, should have been, that at the maturity of the note the persons chosen, if the parties carried out that provision, should have looked to the value of the animal when sold, during the intervening time, and at the maturity of the debt, to arrive at a conclusion as to the amount of the reduction then to be made. As the conclusion of those who were selected by the defendant for that purpose corresponded with the verdict of the jury, we need not now inquire as to which should have prevailed if there had been a difference; nor whether the appraisal was at all binding on the plaintiff.

The last question made by the appellant is as to the rulings on instructions. The appellee objects that the

instructions are not before the Court in a form to authorize their consideration.

A part of the instructions asked by the plaintiff have appended to them the words, " Refused and excepted to," signed by counsel; and a part asked by defendant the words, " Given and excepted to," and likewise signed by plaintiff's counsel. They do not appear to be authenticated by the signature of the judge, nor are they embodied in the bill of exceptions. It is difficult to understand from the record whether the instructions were spread upon the order book or not. As the statute, 2 R. S., p. 110, only requires them to be filed, after being signed by the judge, and not to be entered at large, even on the final record, unless either party may wish to remove the cause to a superior court, we can not indulge the presumption that they were entered on such order book. As the fact does not plainly appear to be so, we are not called upon to decide whether, if they were so entered among the day's proceedings, the signature of the judge to the said proceedings in the order book would be such signature to the instructions as the statute quoted requires.

As the statute only requires them to be filed to become a part of the record, we can not agree with the appellant that the signature of counsel, as above set forth, is sufficient to constitute them matters of record when so filed. A moment's reflection would show the evil that might result in permitting a party, or his attorney, to make a record for the Court, instead of the Court making the same.

We are of opinion, therefore, that the instructions formed no part of the record until signed by the judge in some form, and should not have been incorporated into it by the clerk.

*Per Curiam.*—The judgment is affirmed, with costs.

*Orris Blake, S. H. Goodwin* and *T. C. Whiteside*, for the appellant.

*D. D. Pratt* and *D. P. Baldwin*, for the appellee.